UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL LAND and
DENNIS KANE,

      Plaintiffs,

v.

PFIZER, INC.,

      Defendant.
_____/

Case No. 4:04-CV-158

HON. DAVID W. McKEAGUE[*]

## OPINION

### I. FACTS AND PROCEDURAL HISTORY

Plaintiffs, Michael Land and Dennis Kane, were employed by Pharmacia Diagnostics, a division of Pharmacia, Inc. On or about January 1, 2002, Pharmacia Corporation issued and distributed the "Pharmacia Separation Benefit Plan" ("separation plan"). The purpose of the separation plan is to alleviate financial hardships for employees whose employment is terminated at the company's initiation. Pfizer bought Pharmacia Inc. in April 2003 and sold Plaintiffs' division in April 2004. Plaintiffs employment was permanently terminated after the sale of Pharmacia.

Plaintiffs filed a two count complaint against Pfizer on December 6, 2004. Plaintiffs allege state law breach of contract claims, stating that they are owed benefits under the terms of the separation plan and certain stock option grants. The separation plan provides, inter alia, for certain post-termination exercise periods if the employee is terminated within two years after the date of

___

[*] The Hon. David W. McKeague, United States Circuit Judge for the Sixth Circuit Court of Appeals, sitting by designation.

merger or acquisition. In Count I, Plaintiffs state that upon the sale of Pharmacia Diagnostics, their employment was terminated and they became entitled to benefits under the separation plan. Pls' Complaint ¶¶ 12 - 35. In Count II, Plaintiffs claim that they have a right to stock options that are based, in part, upon the factors stated in the separation plan. Pls' Complaint ¶¶ 36 - 47.

The separation plan provides a fixed formula benefit and provides that the benefit is a severance payment which shall be paid in a lump sum as promptly as possible after the date of termination. The amount paid to each employee depends, in part, on the reason for the employee's termination, the circumstances surrounding that termination and the employee's pay rate. The separation plan expressly states that it is a "formal employee welfare benefit plan under the Employee Retirement Income Security Act of 1974, as amended ("ERISA")." The separation plan also makes clear that there is a formal claim and appeal procedure for disputes arising from the administration of benefits. Separation plan § 9, Def.'s Reply Brief at 15, Ex. A. Participants were given a summary plan description, which satisfies one of the requirements under ERISA. 29 U.S.C. § 1022. The summary plan description identifies the plan administrator, the type of plan and includes a section entitled "Your Rights under ERISA." Separation plan summary, pp. 13-15, Def.'s Reply Brief, Ex. B. ERISA also requires that the plan document provide for one or more "named fiduciaries" who administer the plan. 29 U.S.C. § 1102. Here, the separation plan creates an oversight committee that appoints an administrative committee, with authority to administer, construe and interpret the plan. Separation plan § 6, Def.'s Reply Brief at 12, Ex. A. The separation plan documents also make it clear that the administrative committee has significant discretionary decision making responsibility. Separation plan summary, p. 7, Def.'s Reply Brief, Ex. B (allowing administrative committee to determine whether termination of employee falls within scope of plan).

The separation plan administrators file annual reports with the Department of Labor and IRS, requirements imposed on all ERISA plans. 29 U.S.C. § 1023.

Defendant filed a motion to dismiss, arguing that Plaintiffs' claims are preempted by ERISA. Plaintiffs argue that the separation plan drafters incorporated several provisions in the plan which, like a poison-pill, changed its scope and character when Pharmacia was sold, such that the plan became simple and non-discretionary. Plaintiffs argue that the separation plan requires nothing more than a one-time lump-sum payment that is triggered by a single event (the sale of Pharmacia). Plaintiffs also argue that the separation plan does not require the creation of an ongoing administrative program to determine eligibility for and the level of benefits. According to Defendant, entitlement to severance pay under the separation plan, and entitlement to the stock options involves a number of discretionary determinations. Defendant also argues that the separation plan requires an ongoing administrative scheme, that the separation plan did not change upon the sale of Pharmacia and therefore, the separation plan falls within the scope of ERISA.

The Court held a hearing on defendant's motion on March 28, 2005. The Court took the matter under advisement and asked the parties to submit supplemental briefs on the issue of whether the separation plan fell outside the scope of ERISA after Pfizer bought Pharmacia. For the reasons that follow, the Court will grant Defendant's motion and dismiss Plaintiffs' complaint in its entirety.

## II. ANALYSIS

### A. Standard of Review

In deciding whether to grant a Rule 12(b)(6) motion, the Court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations [of the plaintiff] as true[...]" *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 451 - 452 (6th Cir. 2003) (quoting *Allard v.*

*Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993). The Court does not weigh the evidence or assess the credibility of witnesses, *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 87 -88 (6th Cir. 1997), but rather, examines the complaint and determines whether the plaintiff has pleaded a cognizable claim. *Newcourt Credit Group,* 342 F.3d at 451 - 452 (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). The motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Cameron v. Seitz*, 38 F.3d 264, 270 (6th Cir. 1994)).

### B. Count I

ERISA is the comprehensive federal law governing employee benefits. *Agrawal v. Paul Revere Life Ins. Co.*, 205 F.3d 297, 299 (6th Cir. 2000). ERISA preempts state laws, including common law contract claims, to the extent they "relate to any employee benefit plan" as defined by the statute. 29 U.S.C. § 1144(a); *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47, 48, 107 S. Ct. 1549, 95 L. Ed. 2d 39 (1987) (state common law actions are preempted by ERISA if they relate to employee benefit plans); *Metropolitan Life Ins. Co. v. Mass.,* 471 U.S. 724, 733, 105 S. Ct. 2380, 85 L. Ed. 2d 728 (1985); *Reedstrom v. Nova Chemicals, Inc.,* 96 Fed. Appx. 331, 334, 2004 WL 886949 (6th Cir. 2004) (unpublished)(citing 29 U.S.C. § 1144(a)). An employee benefit is regulated by ERISA only if it is administered through a "plan, fund, or program" established to provide benefits under any of the covered categories. In determining whether a "plan, fund, or program" exists, a court should focus on whether the employee benefit requires an administrative scheme to execute. *Sherrod v. Gen. Motors Corp.,* 33 F.3d 636, 638 (6th Cir. 1994) (citing *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 15, 18, 107 S. Ct. 2211, 96 L. Ed. 2d 1 (1987). To qualify as an ERISA plan, an employee benefits program must: (1) have been established or maintained by

the employer; (2) for the purpose of providing benefits; (3) to the participants of the plan or their beneficiaries. *Cassidy v. Akzo Nobel Salt, Inc.*, 308 F.3d 613, 615 (6th Cir. 2002).

The separation plan is subject to ERISA if under the plan an employer provides either welfare or pension benefits. *See* 29 U.S.C. §1002(3). Welfare benefit plans include severance benefit plans. *Bauer v. RBX Indus., Inc.*, 368 F.3d 569, 584 (6th Cir. 2004); *see also Mass. v. Morash*, 490 U.S. 107, 116, 109 S. Ct. 1668, 104 L. Ed. 2d 98 (1989) (finding that severance benefit plans are ERISA welfare benefit plans). The legal standards for determining whether a severance agreement constitutes an ERISA plan are well-established by the Supreme Court. The decisive inquiry is whether the agreement "requires an ongoing administrative program to meet the employer's obligation." *Fort Halifax*, 482 U.S. 1, 11, 107 S. Ct. 2211; *Swinney v. Gen. Motors Corp.*, 46 F.3d 512, 517 (6th Cir. 1995). ERISA is implicated when a severance plan places "periodic demands on [an employer's] assets that create a need for financial coordination and control." *Id.* at 12, 107 S. Ct. 2211.

To qualify as an ERISA plan, the separation plan must involve more than "simple, mechanical determinations."[2] *Shahid v. Ford Motor Co.*, 76 F.3d 1404, 1409 (6th Cir. 1994) (holding that Ford's severance pay plan, which included continuation of medical benefits, professional re-employment assistance, and retirement "grow-in" provisions, was an ERISA plan). If, to determine benefits, the employer must "analyze each employee's particular circumstances in light of the appropriate criteria," the severance plan is probably an ERISA plan. *Sherrod,* 33 F.3d at

---

[2] Plaintiffs submit that the separation plan is not covered by ERISA unless "significant subjective evaluation" is required to evaluate each application for benefit. (Pls' Supp. Br. at 6, 7.) However, Plaintiff submits no authority for such assertion and the Court declines to adopt such a test.

638-39; *see also Bogue v. Ampex Corp.*, 976 F.2d 1319, 1323 (9th Cir. 1992) (contrasting plans requiring individualized decision making for each employee with programs that involve blanket payout of severance for all employees; although the latter are not ERISA plans, the former are). The court, in *Sherrod*, stated that a one-time lump sum distribution of severance benefits that were predetermined through a collective bargaining process is not consistent with ERISA's definition of a welfare benefit plan. 33 F.3d at 639.

Several courts have concluded that where the reason for termination is relevant to the determination of severance benefits, the agreement is an ERISA plan because some managerial discretion is required. *See Franklin v. Pitney Bowes, Inc.*, 919 F.2d 45 (6th Cir. 1990) (where the policy provided severance pay to employees who were terminated without cause, the court assumed, without deciding, that the unwritten severance policy was an ERISA plan); *Emmenegger v. Bull Moose Tube Co.*, 197 F.3d 929 (8th Cir. 1999) (severance policy was an ERISA plan where no single event triggered a one-time payment of benefits, where benefits would only be paid to employees who gave "excellent service, and only where the employee was not terminated for disciplinary reasons), *cert. denied*, 540 U.S. 947, 124 S. Ct. 389, 157 L. Ed. 2d 277 (2003); *Schonholz v. Long Island Jewish Medical Center*, 87 F.3d 72 (2d Cir. 1996) (severance agreement was an ERISA plan where receipt of benefits turned on whether employee was involuntarily terminated).

A court in the Northern District of California recently held that the separation plan at issue in this case was governed by ERISA.[3] *See Patel v. Sugen Inc.*, 2005 WL 287535 (N.D. Cal. Jan. 4, 2005). In *Patel*, the court noted that under some circumstances, the separation plan unambiguously

---

[3] While the result of this case is obviously not binding on this Court, the Court finds the reasoning expressed therein instructive for purposes of resolving the instant motion.

requires a severance payment, for example, when an employee is outright terminated or only offered a position in another state. *Id.* at * 7. However, other circumstances called for a more complex determination by requiring the company to answer questions related to the nuances of the company hierarchy and the job duties of different positions. *Id.* The court noted that, like the plan in *Bogue*, 976 F.2d at 1323, the separation plan vests significant discretion in the administrators. *Id.* The court ultimately held that the plaintiffs' claims for incentive pay did not 'relate' to the plan and were not preempted by ERISA, but the plaintiff's claims in *Patel*, did not involve claims that arose under the separation plan, but rather, a separate agreement signed prior to termination.

The court, in *Patel*, noted that "[s]everal interlocking provision of the separation benefit plan control whether an employee is eligible for [. . .] benefits." 2005 WL 287535 at *7. Section 3.01 makes an employee eligible for severance benefits in the event of a termination due to a change in control. Termination due to a change in control is defined in section 2.24 as a termination that is "involuntary or that is a s a result of his or her rejection of an offer of continued employment with the Company or an affiliate if such employment is not a Comparable Position." Comparable position is defined in section 2.06 and requires a determination, inter alia, of whether the employee would be subjected to "materially increase[d] business travel or was a "demotion." Demotion is defined in 2.08 by reference to the company's compensation guidelines and the "company-recognized career ladder." *Id*.

Plaintiffs' reliance on *Velarde v. Pace Membership Warehouse, Inc.*, 105 F.3d 1313 (9th Cir. 1997), is misplaced. In determining that the plaintiff's state law claims were *not* preempted, the court, in *Velarde*, distinguished *Bogue*, 976 F.2d 1319, which held that a plan fell under ERISA because it provided for severance benefits if the terminated employee was not offered "substantially

equivalent" employment. 105 F.3d at 1316. The plan at issue in *Velarde* lacked the "substantially equivalent" language in the plan at issue in *Bogue*. *Id*. However, as Defendant points out, the separation plan at issue in this case has a similar provision to the plan that was at issue in *Bogue*. Section 2.24 of the separation plan requires a determination of whether the employee was offered a "comparable position." Separation plan, Def.'s Reply Brief at 7, Ex. A.

Under some circumstances, the plan administrators have limited discretion both before and after a change in control.[4] However, other circumstances require a more complex determination. Particularly, questions regarding whether an employee is a participant involve discretion, including: (1) What is a "material increase" in business travel? (2) How does the company establish its career ladder? (3) How are the compensation guidelines interpreted? These questions do not involve "automatic" decisions or determinations.

The separation plan at issue here provides the administrators with a significant amount of discretionary authority. The question is not whether each individual decision required a significant act of discretionary decision-making, but rather, whether the separation plan, as a whole, required an administrative scheme for discretionary decision-making. *See Patel*, 2005 WL 287535; *see also Sherrod*, 33 F.3d at 638-39; *Emmenegger*, 197 F.3d 929; *Schonholz*, 87 F.3d 72.

In this case, the decisions that must be made are not "automatic," and require discretionary determinations. Furthermore, Plaintiffs' argument, that the separation plan changed after the change

---

[4] An employee is entitled to severance payments when he or she is terminated upon a change in control or offered a position only in another state. Section 4.01 of the separation plan governs the amount of severance pay to which an employee is entitled. Section 4.01 is subject to section 7.01 of the separation plan, and limits the ability of the plan administrator to reduce severance payments in some circumstances for a period of two years after a change in control. However, Section 4.01 of the separation plan does not limit the ability of the administrator to decide whether an employee is a participant in the first instance.

in control is not persuasive.[5] Even after the change in control, Defendant was required to make several discretionary determinations in the case of individual employees. The separation plan required more than a one-time lump-sum payment, required a determination of the reason for the employee's termination and whether the employee was offered a "comparable position." *See* separation plan, Def.'s Reply Brief, Ex. A. In other words, in order to determine the benefits to which plaintiffs' are entitled, defendant was required to "analyze each employee's particular circumstances in light of the appropriate criteria," *Sherrod*, 33 F.3d at 638-39, and involved more than "simple, mechanical determinations." *Shahid*, 76 F.3d at 1409. The Court finds that the separation plan is governed by ERISA and therefore, plaintiffs' state law breach of contract claim in Count I is preempted by ERISA. Accordingly, because the Court finds that Count I is preempted, and plaintiffs cannot prove any set of facts that would entitle them to the relief requested, the Court will dismiss Count I. *Newcourt Credit Group,* 342 F.3d at 451-452.

### C. Count II

In Count II, Plaintiffs claim entitlement to certain stock option grants. Plaintiffs claim that their ability and their right to exercise these stock options is based, in part, on the factors established in the separation plan; a plan that the Court has already determined is governed by ERISA. *See* § II. B., *supra.*

ERISA preempts state laws, including common law contract claims, to the extent they "relate to any employee benefit plan" as defined by the statute. 29 U.S.C. § 1144(a); *Shaw v. Delta Air*

---

[5] It is hard to imagine that, as Plaintiffs would have the Court hold, the separation plan was governed by ERISA prior to the change in control, was not governed by ERISA for a period of two years after the change in control, and is now again governed by ERISA after the two year period passed. The Court declines to accept Plaintiffs' view of the separation plan in this regard.

*Lines, Inc.*, 463 U.S. 85, 97, 103 S. Ct. 2890, 77 L. Ed .2d 490 (1983) (to relate to a benefit plan, a law only need have "a connection with or reference to such a plan."); *Reedstrom*, 96 Fed. Appx. 331, 334, 2004 WL 886949. In *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991), the court noted that "virtually all state law claims relating to an employee benefit plan are preempted by ERISA." "The phrase 'relate to' is given broad meaning such that a state law cause of action is preempted if 'it has connection with or reference to that plan.'" *Id.* at 1275 (quoting *Metropolitan Life*, 471 U.S. 724, 732-33, 105 S. Ct. 2380); *Davies v. Centennial Life Ins. Co.*, 128 F.3d 934, 939 (6th Cir. 1997); *but see Crabbs v. Copperweld Tubing Prods Co.*, 114 F.3d 85 (6th Cir. 1997) ("[e]ven if an action refers to a plan, ... the action will not relate to the plan for preemption purposes when the action only peripherally affects the plan.").

"It is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit." *Cromwell*, 944 F.2d at 1276. The Sixth Circuit has concluded that state-law claims are not preempted where their "effect on employee benefits plans is merely tenuous, remote or peripheral." *Marks v. Newcourt Credit Group, Inc*., 342 F.3d 444, 452 (6th Cir. 2003) (quoting *Cromwell* 944 F.2d 1272); *see also Miller v. PPG Indus., Inc.*, 237 F. Supp. 2d 756 (W.D. Ky 2002) (holding that a state law claim for breach of contract for non-payment of stock options was not preempted where "there is nothing in the ERISA plan that is altered, affected, or diminished as a consequence of this claim for stock options."). In *Newcourt Credit Group*, the court stated, "a state-law action only peripherally affects a plan where a plaintiff refers to a clause in the benefit plan summary to support his employment discrimination claim, or where a plaintiff simply makes 'reference to specific, ascertainable damages' by citing a life insurance contract." *Id.* (quoting *Wright v. Gen. Motors Corp.*, 262 F.3d

10

610, 615 (6th Cir. 2001)). In *Mackey v. Lanier Collections Agency & Serv., Inc.*, 486 U.S. 825, 833, 108 S. Ct. 2182, 100 L. Ed. 2d 836 (1988), the Court noted that although obviously affecting and involving ERISA plans and their trustees, ERISA does not preempt a state law for run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan.

In *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 699 (6th Cir. 2005) the court noted that where the alleged conduct by the fiduciary is "entirely unrelated to and outside the scope of [the fiduciary's] duties under the plan or in carrying out the terms of the plan," courts have found that ERISA's core objectives are not implicated and state-law claims may proceed (quoting *Darcangelo v. Verizon Communications, Inc.*, 292 F.3d 181, 193 (4th Cir. 2002)); *see also Dishman v. UNUM Life Ins. Co.*, 269 F.3d 974, 984 (9th Cir. 2001); *but see Rice v. Panchal*, 65 F.3d 637, 644 (7th Cir. 1995) (complete preemption of state law claims "is required where a state law claim cannot be resolved without an interpretation of the contract governed by federal law.); *see also Rubio v. Chock Full O'Nuts Corp.*, 254 F. Supp. 2d 413, 433 (S.D. N.Y. 2003) (holding that the plaintiff's breach of contract claims regarding a stock option plan were preempted because they related to an ERISA plan and stating, "the benefits contemplated under any alleged stock option plan are directly premised on the interpretation of the Severance Plan governed by ERISA.").

Plaintiffs focus on the fact that the stock options granted them are not themselves an ERISA plan and argue that the stock option plan can be interpreted without having any impact on another plan or without implicating any ERISA issues.[6] Plaintiffs' stock option claim is related to

---

[6] Defendant does not dispute that the stock option plan is not itself governed by ERISA, but argues that Plaintiffs' claims with respect to stock options are preempted because their claim to entitlement to stock options turns entirely on their status under the separation plan.

11

determinations that must be made based on language in the separation plan. Pls' Complaint ¶¶ 42 - 45 (stating that Plaintiffs' claims for stock option grants are based upon and affected by the terms of the separation plan); *see also* Letter to Barry Westgate at 4, Pls' Response Brief, Ex. A (stating that "the language expanding the post termination exercise rights [for the stock option grants] is taken directly from the acquisition termination language and definitions found on page ten of the separation plan summary."). The letter to Barry Westgate also states that the same analysis that applies to Plaintiffs' qualifications for benefits under the separation plan applies to the stock option grants as well. *Id.*; *see also* Joint Status Report at 3, Pls' statement of the case ("[t]he terms for qualifying for "the extended options are virtually identical to those in the [separation plan.]" Thus, the decisions that affect Plaintiffs' entitlement to benefits under the separation plan, such as whether a termination was voluntary and whether an employee was offered a "comparable position" with the company, affect Plaintiffs' entitlement to the stock options.

Like the plaintiffs in *Rubio,* 254 F. Supp. 2d 413 and *Panchal*, 65 F.3d 637, Plaintiffs' claims in this case for benefits under the stock option plan necessarily involves interpretation of the same terms at issue in the separation plan. Thus, any determination that Plaintiffs are entitled to benefits under the stock option plan involves the same decisions that must be made under the separation plan, and indeed, an interpretation of the contract governed by federal law.

The Court fully understands that there are cases in which a state law claim may not "relate" to a plan because such claim only peripherally affects the plan. This, however, is not a case where the benefit to which plaintiffs claim entitlement is so peripherally related to the plan as to not fall within the scope of ERISA. Plaintiffs' state law claim in Count II cannot be evaluated without reference to the separation plan. Plaintiffs' claim in Count II requires an interpretation of the terms

of the plan and an application of that interpretation to the stock options. Therefore, Count II is related to and employee benefit plan and is preempted by ERISA. Accordingly, plaintiff is not entitled to the relief requested and the Court will dismiss Count II.

An order consistent with this opinion shall issue forthwith.


Dated: June 16, 2005                              /s/   David W. McKeague
                                                 DAVID W. McKEAGUE
                                                 UNITED STATES CIRCUIT JUDGE